Jay D. Ellwanger, CA Bar No. 217747
**ELLWANGER LAW LLLP**
8310-1 N. Capital of Texas Highway, Ste. 190
Austin, Texas 78731
jellwanger@equalrights.law
(737) 808-2260
Attorney for Plaintiffs

James A. Vagnini (*Pro Hac Vice* pending)
Monica Hincken (*Pro Hac Vice* pending)
**VALLI KANE & VAGNINI LLP**
600 Old Country Road, Ste. 519
Garden City, New York 11530
jvagnini@vkvlawyers.com
mhincken@vkvlawyers.com
(516) 203-7180
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON BAPTISTE, JOSEPH BAPTISTE, DAVID DILLWORTH, KENNETH DILLWORTH, MARVIN HARRIS, and HERMAN ST. BRICE, <br><br> Plaintiffs, <br><br> v. <br><br> KS INDUSTRIES, LP, <br><br> Defendant. | No. 1:18-at-00003 <br><br> **COMPLAINT** <br><br><br> **(JURY TRIAL DEMANDED)** |

1.      Plaintiffs AARON BAPTISTE; JOSEPH BAPTISTE; DAVID DILLWORTH; KENNETH

DILLWORTH; MARVIN HARRIS; and HERMAN ST. BRICE; (collectively "Plaintiffs"), by and

through their attorneys, bring this action for damages and other legal and equitable relief from the

violation of the laws proscribing retaliation and discrimination based on race, color, and/or national

origin, stating the following as Plaintiffs' claims against KS INDUSTRIES, LP ("KSI" or

"Company" or "Defendant").  Plaintiffs demand a trial by jury.

**INTRODUCTION**

2.      This is an action brought by Plaintiffs seeking damages from Defendant for acts of retaliation and discrimination based on race, color, and/or national origin. Defendant's acts of discrimination and retaliation are in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C §§ 2000e *et. seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 et seq.; the Fair Employment and Housing Act ("FEHA"), CA Gov't Code §§ 12900 *et seq.*; and any other cause(s) of action that can be inferred from the facts set forth herein.

3.      Defendant is a privately owned engineering, fabrication, and construction company headquartered in the state of California. Defendant operates in several states, including North Dakota, where Plaintiffs worked.

4.      Plaintiffs are formerly employed by the Defendant. All Plaintiffs resided outside the state of North Dakota, but relocated to work at Defendant's Tioga, North Dakota worksite. Upon arriving at the Tioga worksite, Plaintiffs were immediately subjected to Defendant's discriminatory and retaliatory practices.

5.      Plaintiffs were subjected to retaliation; offensive graffiti and harassment; disparate employment practices that favored non-African-American employees (*e.g.,* terminations, promotional opportunities, pay practices, and disciplinary procedures), and disparate work assignments and conditions (*e.g.,* requiring Plaintiffs to remain in the sub-zero North Dakota temperatures while similarly situated non-African-American employees were permitted breaks to warm up in Defendant's "warming trucks").

6.      Plaintiffs allege that they are entitled to recover: (i) back pay wages, (ii) front pay wages, (iii) benefits (iii) compensatory damages (iv) punitive damages, (v) interest, and (vi) attorney's fees and costs, pursuant to the Title VII and 42 U.S.C. § 2000e *et seq.* of the Civil Rights Act of 1964,

**COMPLAINT**

as amended and 42 U.S.C §§ 2000e *et. seq.*, the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 et seq., and the Fair Employment and Housing Act ("FEHA"), CA Gov't Code §§ 12900 *et seq.* and such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C §§ 2000e *et. seq.*, as amended and 42 U.S.C §§ 1981 et seq., as amended. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant maintains offices, conducts business, and resides in this District.

## PARTIES

9.     Defendant is a privately held company with its headquarters located at 6205 District Boulevard, Bakersfield, California 93313.

10.     Defendant's principal place of business is located at 6205 District Boulevard, Bakersfield, California 93313.

11.     Defendant employs more than five hundred (500) persons.

**COMPLAINT**

12.     Plaintiff AARON BAPTISTE is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American citizen of the United States of America and is a resident of the state of California.

13.     Plaintiff JOSEPH BAPTISTE is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American citizen of the United States of America and is a resident of the state of California.

14.     Plaintiff DAVID DILLWORTH is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American citizen of the United States of America and is a resident of the state of Oklahoma.

15.     Plaintiff KENNETH DILLWORTH is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American citizen of the United States of America and is a resident of the state of Oklahoma.

16.     Plaintiff MARVIN HARRIS is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American citizen of the United States of America and is a resident of the state of California.

17.     Plaintiff HERMAN ST. BRICE is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American citizen of the United States of America and is a resident of the state of California.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

18.     Plaintiffs who have herein alleged claims pursuant to Title VII have timely filed complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC").

19.     In May 2017, the EEOC issued a determination and notice of conciliation in which the EEOC found that the Plaintiffs and a class of Black employees were subjected to severe and pervasive harassment and differential treatment in violation of Title VII.

**COMPLAINT**

20.     The EEOC also found that the Plaintiffs were retaliated against for engaging in protected activity under Title VII.

21.     The EEOC further found that Plaintiff Harris was discriminated against because of his race and/or in retaliation for complaining about discrimination when Defendant failed to promote him and constructively discharged him in violation of Title VII.

22.     The EEOC further found that Plaintiff Aaron Baptiste was discriminated against when he was subjected to a wrongful termination in violation of Title VII.

23.     The EEOC informed Plaintiffs that it was issuing a failure to conciliate and Notice of Right to Sue prior to the filing of this Complaint.

## STATEMENT OF FACTS

### I.     Facts Common to All Plaintiffs

24.     Defendant is an engineering, fabrication, and construction company that employs more than five hundred (500) employees.

25.     Defendant is headquartered in the state of California and conducts business in several states, including North Dakota.

26.     Defendant's Human Resources department is located within the state of California.

27.     Plaintiff's paychecks were paid from Defendant's headquarters.

28.     Throughout the relevant time period, Defendant maintained a construction site located in Tioga, North Dakota (the "Tioga site").

29.     Throughout the relevant time period, Defendant employed Plaintiffs at the Tioga site.

30.     Throughout the relevant time period Defendant subjected Plaintiffs to racially hostile graffiti in their restrooms and work areas. Such graffiti included: "go home Niggers," "if y'all Niggers don't like it here you can leave," "Niggers," "banana Niggers," "Nigger Dick," and depictions of Black persons hanging by a noose.

**COMPLAINT**

31.     Defendant had knowledge of the racially hostile graffiti as their supervisory personnel used the same restrooms and because of Plaintiffs' complaints to Defendant.

32.     Throughout the relevant time period, Plaintiffs were called "boy," "colored," and "Nigger" by their White supervisors and coworkers.

33.     Throughout the relevant time period, White employees wore confederate flag stickers on their work helmets to intimidate Plaintiffs.

34.     Plaintiffs made complaints to Defendant regarding the derogatory terms they were called, among other things, but Defendant failed to take any remedial action.

35.     Upon information and belief, Company policy dictates that all workers receive incremental wage increases. However, Black employees were routinely denied their raises.

36.     Defendant also implemented and maintained a disciplinary policy that favored White employees as Plaintiffs were subjected to harsher disciplinary procedures.

37.     Throughout the relevant time period, Defendant required Plaintiffs to perform the most dangerous work despite the availability of similarly situated non-African-American employees able to perform the same work.

38.     In addition, Plaintiffs and similarly situated Black workers were routinely given improper tools to complete their work, if provided with any tools at all.

39.     Beginning in or around February 2014, Plaintiffs were required to work outside in sub-zero temperatures and were not permitted to take mandatory breaks to warm up in the "warming trucks" like similarly situated non-Black employees.  For example, Defendant's protocol dictates that all employees working in extreme cold as defined by state guidelines were required to work approximately ten (10) minutes and receive an approximately ten (10) minute warm-up period. Plaintiffs, however, were routinely forced to work longer than ten (10) minutes in the extreme cold and given shorter warm-up periods, if any.

**COMPLAINT**

40.     Plaintiffs employed as C-2s ("crew pushers"), were prohibited from taking breaks and days off despite working thirteen (13) to fourteen (14) days in a row, which, upon information and belief, was in violation of Defendant's policy. If Plaintiffs who were crew pushers took a day off of work after working thirteen (13) to fourteen (14) days straight, they would receive a "no call/no show" — a disciplinary demerit, despite providing notice.

41.     The Defendant failed to institute any anti-discrimination training during the Plaintiffs' entire employment despite the complaints raised by Plaintiffs.

**II.     Facts Specific to Individual Plaintiffs**

**AARON BAPTISTE**

42.     Plaintiff Aaron Baptiste ("A. Baptiste") was employed by Defendant as a crew pusher from in or around January 2014 to in or around February 2014.

43.     From the beginning of his employment, Plaintiff A. Baptiste's crew made it clear he was unwelcome. The crew was picked up together at 5 a.m., an agreed-upon pick-up time and meeting site, to be transported the worksite. Plaintiff A. Baptiste was never late to the meeting site. However, his crew left early on multiple occasions in an attempt to ensure Plaintiff A. Baptiste would be terminated.

44.     Plaintiff A. Baptiste's supervisor would repeatedly give him the most difficult work assignments while refusing to provide him with a partner as White employees were provided.

45.     On or around January 17, 2013, a White employee shouted "Fucking Niggers" while on the telephone and in the presence of Plaintiff A. Baptiste.

46.     Plaintiff A. Baptiste immediately reported this incident to his foreman who responded: "what do you want me to do about it?"

47.     Upon information and belief, no corrective action was taken against the White employee who yelled the racial slur.

7                                                    **COMPLAINT**

48.     Plaintiff A. Baptiste was forced to work 14-plus hours per day for more than 20 consecutive days in sub-zero temperatures.

49.     On the February 2, 2014, Plaintiff A. Baptiste notified his immediate supervisor that he needed to take a day off. His supervisor gave him permission to take the day off.

50.     On or around February 3, 2014, Plaintiff A. Baptiste was wrongfully terminated for a "no call/no show" and because his boot laces were not tied properly.

51.     Notably, not only did Plaintiff receive permission for his day off, multiple non-Black employees received multiple "no call/no shows" and were not terminated.

52.     Further, upon information and belief, Company policy states that employees are permitted one "no call, no show."

53.     In addition, Plaintiff A. Baptiste purchased Basin boots for his KSI employment, which are slide-on boots with a permanent knot.  Regardless, White employees were not disciplined in the same way even assuming boot laces had not been tied properly, which they were.

### JOSEPH BAPTISTE

54.     Plaintiff Joseph Baptiste ("J. Baptiste") was employed by Defendant as a general foreman from in or around September 2013 to in or around January 2014.

55.     Plaintiff J. Baptiste transferred to the Tioga location in 2014 with the promise that he would be paid $31 per hour. However, when he arrived, he was only paid $28 per hour despite the promise for higher pay.

56.     A White employee with twenty-five years less experience than Plaintiff J. Baptiste was paid $2 more per hour than Plaintiff J. Baptiste.

57.     Plaintiff J. Baptiste reported the disparate pay to his superintendent, the vice president of the Company, and Human Resources. All refused to ensure that he received the pay he was promised prior to relocating to North Dakota.

8                                                    **COMPLAINT**

58.     During his employment, Plaintiff J. Baptiste's supervisor asked him to build a full support and knowingly provided him with the wrong measurements in an effort to have him terminated for poor work performance.

59.     Plaintiff J. Baptiste's supervisor repeatedly told him that he would rather work with White people and Mexicans than Black people.

60.     Plaintiff J. Baptiste reported his supervisor's comments to Human Resources; however, no corrective action was taken.

61.     Plaintiff J. Baptiste was not permitted to drive Defendant's vehicles. Every other White general foreman had the privilege to drive a Company truck from the worksite to their home. Plaintiff J. Baptiste, however, was the only general foreman who had to take the bus with his subordinates.

62.     In January 2014, however, Defendant's superintendent instructed Plaintiff J. Baptiste to drive workers home in Defendant's vehicle because the bus had already departed for the day. He also instructed Plaintiff J. Baptiste to pick up "any employee who could fit in the truck" the following morning.

63.     While Plaintiff J. Baptiste was driving the company vehicle, he slid on black ice. The incident did not cause harm to either the passengers or the vehicle.

64.     Two days later, however, Plaintiff J. Baptiste was terminated for an alleged safety violation.

65.     Yet, a White employee, admitted to driving eighty (80) miles per hour when his vehicle slid off the road and only received a five (5) day suspension for the incident.

### **DAVID DILLWORTH**

66.     Plaintiff David Dillworth ("D. Dillworth") was employed by Defendant as a crew-pusher from in or around November 2013 to in or around January 2014.

9                                                                          **COMPLAINT**

67.     Plaintiff D. Dillworth is qualified as a master rigger; however, he was only allowed to perform the duties of a crew pusher. Notably, non-Black master riggers were permitted to perform the duties of a master rigger.

68.     Additionally, when Plaintiff D. Dillworth complained to his supervisor that he should be performing the duties of a master rigger, his supervisor incorrectly stated "you can't rig anything; you can't even read."

69.     Throughout Plaintiff D. Dillworth's employment he was paid less than similarly situated non-Black employees who had less experience and/or tenure than him. Notably, the base rate for a crew pusher was $25.00 per hour, but Plaintiff D. Dillworth was only paid $23.00 per hour despite his three decades of experience.

70.     Plaintiff D. Dillworth was then denied the standard performance review in order to ensure he would not qualify for a raise.

71.     Plaintiff D. Dillworth was also continually subjected to discriminatory working conditions. He repeatedly was forced to work on the top of tanks while his co-workers remained working on the ground.

72.     In or around January 2014, he was required to climb an ice-covered ladder during an ice storm by his general foreman. When Plaintiff D. Dillworth objected, his general foreman threatened to terminate him. Plaintiff D. Dillworth reported this incident to Defendant's Human Resources director, but no remedial action was taken.

73.     During an extremely cold shift, Plaintiff D. Dillworth began feeling sick due to the prolonged exposure to extreme temperatures.  His supervisor refused to allow him to seek medical attention and demanded he keep working.  Plaintiff D. Dillworth reported this incident to Human Resources after his shift, but again no remedial action was taken.

**COMPLAINT**

74.     As a result of the Company's discriminatory work assignments and refusal to allow Plaintiff D. Dillworth to seek medical attention, he became so ill that he was forced to return home to seek proper medical treatment and was constructively discharged in January 2014.

**<u>KENNETH DILLWORTH</u>**

75.     Plaintiff Kenneth Dillworth ("K. Dillworth") was employed by Defendant as a general foreman—and was later demoted three levels to a crew pusher—from in or around October 2013 to in or around January 2014.

76.     Upon arriving at the Tioga site, Plaintiff K. Dillworth did not receive the workplace training that similarly situated non-African-American employees received.

77.     Throughout his employment, the superintendent refused to provide Plaintiff K. Dillworth with the proper work tools and materials. For example, the superintendent only provided the proper pipe handling equipment to similarly situated non-African-American employees. Plaintiff K. Dillworth had to drive approximately (2) hours to retrieve the proper tools and equipment, while non-Black similarly situated employees had them delivered to them.

78.     Throughout his employment, the superintendent refused to answer any of Plaintiff K. Dillworth's telephone calls, which limited his ability to properly perform his job duties. However, the superintendent constantly answered his telephone for White employees. On one (1) occasion, immediately after the superintendent ignored Plaintiff K. Dillworth's telephone call, a White co-worker stated to Plaintiff K. Dillworth "watch this." He then called the superintendent who immediately answered his telephone. Both men proceeded to talk for approximately twenty (20) minutes while Plaintiff K. Dillworth observed.

79.      In or around December 2013, Plaintiff K. Dillworth complained to Human Resources about the superintendent only providing assistance to non-Black employees. Despite Plaintiff K. Dillworth's complaint, no remedial action was taken by Defendant.

**COMPLAINT**

80.     Also in or around December 2013, Plaintiff K. Dillworth complained to Defendant's vice president about the superintendent only providing assistance to non-Black employees. Despite Plaintiff K. Dillworth's complaint, no remedial action was taken by Defendant.

81.     On December 18, 2013 Plaintiff K. Dillworth went on an approved vacation and returned to work on January 9, 2014. Upon his return, he was informed that was going to be demoted from foreman to crew pusher despite never being given a performance review or receiving prior complaints about his work performance.

82.     The stated reason for Plaintiff K. Dillworth's demotion was installation errors. Notably, the installation errors he was cited for were made while Plaintiff K. Dillworth was on vacation and thus could not have been made by him. Moreover, the White employee responsible for the installation errors, did not receive any discipline by Defendant.

83.     In early January 2014, Plaintiff K. Dillworth complained to Defendant's vice president that Defendant maintains a "double standard" policy that favors non-African-American employees over Black employees.

84.     The vice president responded by forcing Plaintiff K. Dillworth to take the weekend off for which he did not receive pay.

85.     When he returned to work, Plaintiff K. Dillworth then reported the discrimination again to the vice president and to a corporate Human Resources manager.  They responded by forcing Plaintiff K. Dillworth to sign a paper that confirmed his demotion and failed to address his complaints of discrimination.

86.     Plaintiff was then demoted from foreman to crew pusher with a significant decrease in pay. As a result of the discrimination and retaliation he faced, Plaintiff was constructively discharged at the end of January 2014.

**COMPLAINT**

**MARVIN HARRIS**

87.     Plaintiff Marvin Harris ("Harris") was employed by Defendant at the Tioga, North Dakota site from in or around July 2012 to in or around January 2014.

88.     Plaintiff Harris was qualified for a safety lead position and was approved by Defendant's corporate office for said position.

89.     In or around July 2012, Plaintiff Harris was transferred to the Tioga site to fill one (1) of two (2) safety lead positions. However, when Plaintiff Harris arrived in Tioga he was denied the position by his White supervisor who filled with positions with two White employees.

90.     Plaintiff Harris was, instead, required to work as a safety specialist earning $6 less per hour than promised.

91.     In or around November 2012, Plaintiff Harris asked his White supervisor about a promotion to a safety lead position. The supervisor told Plaintiff Harris that there were new qualifications for the position which he did not meet despite the fact that other White employees did not have to meet the new criteria.

92.     Following this denial of promotion, Plaintiff Harris reported his supervisor's refusal to promote him to a safety lead position to Defendant's corporate safety and risk manager, and to the Human Resources Director. No remedial action was taken by Defendant.

93.     In January 2013, Plaintiff Harris applied for a promotion to a vacant safety lead position, but was again denied by his supervisor despite being qualified for the position. Mr. Anderson promoted a White employee to the safety lead position.

94.     In or around May 2013, Plaintiff Harris complained to Defendant's vice president regarding his supervisor's failure to promote him. His complaints were dismissed and the vice president stated that the allegations were unfounded because he personally knew that Mr. Anderson "was not a racist."

**COMPLAINT**

95.     In or around June 2013, a partial power outage occurred at the Tioga site. While in a room affected by the power outage, his supervisor stated to Plaintiff Harris: "hey Marvin, turn around and smile so that [Defendant's project manager)] can see you."

96.     Embarrassed and offended by the comment, Plaintiff Harris reported this derogatory comment and the supervisor's repeated failure to promote him to a member of Human Resources and to Company management. Again, Defendant took no remedial action.

97.     In or around September 2013, Plaintiff Harris requested a pay raise from his supervisor. The supervisor required Plaintiff Harris to pass the CHST test to receive a raise. Non-African-American employees, however, were issued pay raises without passing the CHST test.

98.     On or about December 5, 2013, Plaintiff Harris stated that he was going to wear a clear facemask to protect his face from the cold weather. His supervisor stated to Plaintiff Harris that if he wore a clear facemask he would look like "Darth Vader."

99.     Plaintiff Harris reported the "Darth Vader" comment and the failure to increase his pay rate to Human Resources, but, again, no remedial action was taken by Defendant.

100.    In December 2013, Plaintiff Harris complained to another White supervisor about Defendant's failure to promote him and their failure to increase his rate of pay. That supervisor then informed Plaintiff Harris that he would never receive a promotion or increase in pay because everyone was aware of his complaints to Human Resources.

101.    Plaintiff Harris never received a negative performance review, nor any type of discipline throughout his employment. Nonetheless, his supervisor began telling his co-workers and other supervisors on site that Plaintiff Harris was not properly performing his job duties and that he should not be promoted. He then began excluding Plaintiff Harris from safety meetings.

**COMPLAINT**

102.    As a direct result of Defendant's discriminatory employment practices and their refusal to remedy the toxic work environment he was subjected to, Plaintiff Harris was constructively discharged in January 2014.

### HERMAN ST. BRICE

103.    Plaintiff Herman St. Brice ("St. Brice") was employed by Defendant as a general foreman from in or around April 2010 to in or around February 2014.

104.    During his employment, Plaintiff St. Brice was routinely performing the duties of superintendent while getting paid at a general foreman rate.

105.    Upon information and belief, the Company billed its clients as if Plaintiff St. Brice was a superintendent despite paying Plaintiff St. Brice as a general foreman.

106.    In or about March 2013, however, Plaintiff St. Brice was denied a formal promotion to a superintendent position despite routinely performing that role since the start of his employment.

107.    Instead, the superintendent position was given to a less qualified White employee.

108.    In January 2014, Plaintiff St. Brice was walking into the work site's office when the site safety manager stated to him "it's already dark and it's getting darker in here now."

109.    Plaintiff St. Brice reported the racially charged comment to his superiors; however, no corrective action was taken.

110.    On February 6, 2014, the superintendent gave a working foreman permission to excavate a "hot spot"—a location with live powerlines beneath it. According to the Company's rules, Plaintiff St. Brice, as a general foreman, must be present prior to a "hot spot" excavation. However, the superintendent gave the working foreman permission to excavate without Plaintiff St. Brice's presence.

**COMPLAINT**

111.   When Plaintiff St. Brice arrived on the worksite, per Company rules, he immediately ordered that the work stop; however, the working foreman informed him that he received orders from the superintendent and refused to stop.

112.   When the excavation resulted in a line strike, exactly what Plaintiff St. Brice warned would happen if the work continued, the superintendent then blamed Plaintiff St. Brice as the general foreman over the site and used the incident as a pretext to terminate him and replace him with a much less experienced White employee.

113.   Notably, the worker who actually caused the line strike and refused to comply with Plaintiff St. Brice's order to stop was not disciplined.

114.   Plaintiff St. Brice was never written up or disciplined during his almost three (3) years with the Company.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.**
**(Disparate Treatment)**

115.   Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

116.   The conduct alleged herein violates Title VII and 42 U.S.C. § 2000 *et seq*. as Defendant has engaged in the practice of discrimination against the Plaintiffs.

117.   The conduct alleged herein violates Title VII and 42 U.S.C. § 2000e *et seq*. as Defendant has engaged in the practice of discrimination with respect to the terms and conditions of Plaintiffs' employment.

118.   Due to Plaintiffs' race and/or color, Defendant subjected Plaintiffs to discriminatory work assignments and discriminatory denial of promotional opportunities to which Plaintiffs' White co-workers were not subjected.

**COMPLAINT**

119.    Plaintiffs' requests for relief are set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Hostile Work Environment)**

120.    Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

121.    The conduct alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* as Defendant has engaged in racial, color, and/or national origin harassment and has created, maintained and condoned a hostile work environment with respect to Plaintiffs named herein who have asserted such claims.

122.    The conduct Plaintiffs complained of was sufficiently severe or pervasive to alter the terms and conditions of their employment by creating an abusive working environment.

123.    The Defendant knew about the conduct and failed to implement reasonably prompt and appropriate corrective action.

124.    Plaintiffs' requests for relief are set forth below.

**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.***
**(Retaliation)**

125.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

126.    Plaintiffs lodged complaints with Defendant regarding discrimination and/or the hostile work environment to which they were subjected, and as such engaged in protected activity under Title VII.

127.    Defendant retaliated against Plaintiffs because of their protected activity.

128.    Plaintiffs' requests for relief are set forth below.

17                                                    **COMPLAINT**

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.***
**(Disparate Treatment)**

129.    Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

130.    Plaintiffs were subjected to discrimination on the basis of race, color, and/or national origin by Defendant.

131.    The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Defendant has engaged in the practice of discrimination against Plaintiffs named herein who have asserted such claims.

132.    Defendant intentionally discriminated against Plaintiffs in violation of § 1981 by unlawfully subjecting them to adverse employment actions on the basis of their race, color, and/or national origin.

133.    Plaintiffs' requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.***
**(Hostile Work Environment)**

134.    Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

135.    The conduct alleged herein violates Civil Rights Act of 1871, as amended, 42 U.S.C. §§ 1981 *et seq.* as Defendant has engaged in racial, color, and/or national origin harassment and has created, maintained and condoned a hostile work environment with respect to Plaintiffs named herein who have asserted such claims.

136.    The conduct Plaintiffs complained of was sufficiently severe or pervasive to alter the terms and conditions of their employment by creating an abusive working environment.

137.    Plaintiffs' requests for relief are set forth below.

**COMPLAINT**

## AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
### The Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981 *et seq.*
### (Retaliation)

138.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

139.     Plaintiffs lodged complaints with Defendant regarding discrimination and/or the hostile work environment to which they were subjected, and as such engaged in protected activity under § 1981.

140.     Defendant retaliated against Plaintiffs because they engaged in protected activity.

141.     Plaintiffs' requests for relief are set forth below

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
### The Fair Employment and Housing Act, CA Gov't Code §§ 12900 *et seq.*
### (Disparate Treatment)

142.     Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

143.     Plaintiffs were subjected to discrimination on the basis of his race, color, and/or national origin by Defendant.

144.     The conduct alleged herein violates the Fair Employment and Housing Act, CA Gov't Code §§12900 *et seq.*, as Defendant has engaged in the practice of discrimination against Plaintiffs named herein who have asserted such claims.

145.     Defendant intentionally discriminated against Plaintiffs in violation of the CA Gov't Code §§ 12900 *et seq.* by unlawfully subjecting them to adverse employment actions on the basis of their race, color, and/or national origin.

146.     Plaintiffs' requests for relief are set forth below.

**COMPLAINT**

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
### The Fair Employment and Housing Act, CA Gov't Code §§ 12900 *et seq.*
### (Hostile Work Environment)

147.    Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

148.    The conduct alleged herein violates the Fair Employment and Housing Act, CA Gov't Code §§ 12900 *et seq.* as Defendant has engaged in racial, color, and/or national origin harassment and has created, maintained and condoned a hostile work environment with respect to Plaintiffs named herein who have asserted such claims.

149.    Plaintiffs' requests for relief are set forth below.

## AS AND FOR A NINETH CAUSE OF ACTION FOR A VIOLATION OF
### The Fair Employment and Housing Act, CA Gov't Code §§ 12900 *et seq.*
### (Retaliation)

150.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

151.    Plaintiffs who have asserted such claims engaged in protective activity by complaining to Defendant that their conduct violated the FEHA by refusing, on the basis of race, to provide them with the necessary materials to perform their job duties.

152.    Plaintiffs who have asserted such claims engaged in protected activity by complaining to Defendant that their conduct violated the FEHA by subjecting them to a racially hostile work environment, failing to promote them in favor of non-Black employees, and subjecting them to disparate pay.

153.    Defendant retaliated against Plaintiffs because they engaged in protected activity.

154.    Defendant's conduct was in violation of the Fair Employment and Housing Act, CA Gov't Code §§ 12900 *et seq.*

155.    Plaintiffs' requests for relief are set forth below

20                                    **COMPLAINT**

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, pray for the following relief:

    A.  That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiffs under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*; and Fair Employment and Housing Act, CA Gov't Code §§12900 *et seq.*, prohibiting discrimination, harassment, and retaliation in employment;

    B.  That judgment be entered in favor of Plaintiffs against Defendant for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiffs;

    C.  That Plaintiffs be awarded compensatory damages where available;

    D.  That Plaintiffs be awarded punitive damages;

    E.  That Plaintiffs be awarded pre and post judgment interest;

    F.  That the Court award Plaintiffs attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs; and

    G.  That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law.

Plaintiffs also seek injunctive relief, including but not limited to:

    H.  Training on the subject of employment discrimination for all of Defendant's employees;

    I.  Diversity training for all managers conducted by reputable outside vendors;

    J.  Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

    K.  Active monitoring of the work areas to ensure compliance with discrimination policies;

21          **COMPLAINT**

L.   All promotional opportunities posted on all employee bulletin boards; and

M. Monitoring by the Court of a Federal Agency to ensure that Defendant comply with all injunctive relief.

156.     Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: January 3, 2017

/s/ *Jay D. Ellwanger*
Jay D. Ellwanger, CA Bar No. 217747
**ELLWANGER LAW LLLP**
8310-1 N. Capital of Texas Highway, Ste. 190
Austin, Texas 78731
jellwanger@equalrights.law
(737) 808-2260
**Attorney for Plaintiffs**

James A. Vagnini (Pro Hac Vice pending)
Monica Hincken (Pro Hac Vice pending)
**VALLI KANE & VAGNINI LLP**
600 Old Country Road, Ste. 519
Garden City, New York 11530
jvagnini@vkvlawyers.com
mhincken@vkvlawyers.com
(516) 203-7180
**Attorneys for Plaintiff**

22                                      **COMPLAINT**